[Crim. No. 1697.  First Appellate District, Division Two.—December 9, 1932.]

THE PEOPLE, Respondent, v. WILLIAM J. RALEIGH, Appellant.

Vincent W. Hallinan and C. K. Bonestell for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton for Respondent.

SPENCE, J.—The defendant was duly convicted of the crime of the attempt to commit robbery of the first degree and from the final judgment of conviction and the order denying his motion for new trial, defendant has appealed.

The defendant entered a haberdashery, approached within one or two feet of the proprietor, pointed a gun at the proprietor, and said, "Stick them up." The proprietor ran out of the door on to the street. The defendant followed and fled without accomplishing his purpose.

█ Calling our attention to the fact that there is no evidence in the record to show that the gun was loaded, appellant contends that the evidence was insufficient to sustain the verdict of attempt to commit robbery of the first degree. We find no merit in this contention.

Section 211a of the Penal Code defines first and second degree robbery as follows: "All robbery which is perpetrated by torture or by a person being *armed with a dangerous or deadly weapon* is robbery in the first degree. All other kinds of robbery are of the second degree." (Italics ours.) It is therefore clear that all that is required to constitute robbery of the first degree is that the person perpetrating the robbery be "armed with a dangerous or deadly weapon". The question of whether an unloaded gun constitutes a "dangerous or deadly weapon" within the meaning of the section has been frequently considered. (*People* v. *Hayes,* 118 Cal. App. 341 [5 Pac. (2d) 439]; *People* v. *Seaman,* 101 Cal. App. 302 [281 Pac. 660]; *People* v. *Hall,* 87 Cal. App. 634 [262 Pac. 50]; *People* v. *Freeman,* 86 Cal. App. 374 [260 Pac. 826]; *People* v. *Shaffer,* 81 Cal. App. 752 [254 Pac. 666]; *People* v. *Egan,* 77 Cal. App. 279 [246 Pac. 337]; *People* v. *Seawright,* 72 Cal. App. 414 [237 Pac. 796, 797].) There is some apparent conflict in the language of the decisions and judgments have been affirmed upon different grounds, but our attention has not been called to any case in this

jurisdiction in which a conviction of first degree robbery has been reversed merely because there was no evidence to show that the gun in the possession of the perpetrator was loaded. ■ In fact, it has been indicated in numerous decisions that a person armed with an unloaded gun is a person "armed with a dangerous or deadly weapon" within the meaning of the section. (*People* v. *Hayes, supra; People* v. *Seaman, supra; People* v. *Hall, supra; People* v. *Freeman, supra; People* v. *Shaffer, supra; People* v. *Egan, supra.*) This we believe to be the correct view. Appellant cites and relies upon the language used by the learned author of the concurring opinion in *People* v. *Seawright, supra,* which indicates that a person armed with an unloaded gun is not a person "armed with a dangerous or deadly weapon" within the meaning of the section under consideration. To the extent that the language of that opinion so indicates we cannot agree with the views there expressed.

From a reading of the decisions on the subject we are of the opinion that a distinction should be made between two classes of "dangerous or deadly weapons". There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. ■ The instrumentalities falling in the first class, such as guns, dirks and blackjacks, which are weapons in the strict sense of the word and are "dangerous or deadly" to others in the ordinary use for which they are designed, may be said as a matter of law to be "dangerous or deadly weapons". This is true as the ordinary use for which they are designed establishes their character as such. ■ The instrumentalities falling in the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed, may not be said as a matter of law to be "dangerous or deadly weapons". When it appears, however, that an instrumentality other than one falling within the first class is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a

particular occasion to use it as a·weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.

Much is said in the decisions regarding the manner of use of the instrumentalities involved, but there is no doubt that once the character of the instrumentality is established as a "dangerous or deadly weapon", it is immaterial whether such weapon is used or even exposed to view. (*People* v. *Hall*, 105 Cal. App. 359 [287 Pac. 533].) We believe that the only significance which may be attached to the manner of use of a given instrumentality is that the use or threatened use thereof will often definitely indicate that an instrumentality falling within the second class was intended for use as a weapon on the particular occasion.

Reference is also made in the decisions to the "present ability" of the possessor of the instrumentality. A showing of "present ability" has been deemed essential in cases involving the charge of *assault* with a deadly weapon. (*People* v. *Sylva*, 143 Cal. 62 [76 Pac. 814].) But such showing is not essential under such section 211a where the accused is armed with a gun. (*People* v. *Seaman*, *supra*.) On this general subject of "present ability" we quote from *People* v. *Freeman*, 86 Cal. App. 374, where the court said at page 376 [260 Pac. 826, 827]: "It is manifest that a heavy club or a piece of gas pipe in the hands of a child of tender years and proposed by it to be used as against a large and powerful man of mature years could scarcely be considered either as a deadly or a dangerous weapon; but reversing the situation as to parties, it is clear that the weapon might be not only dangerous, but deadly. Notwithstanding the fact that ordinarily and in and of itself the instrumentality may be in fact comparatively harmless, if, considering the attendant circumstances, together with the present ability of its possessor, the instrument is capable of being used in a deadly or dangerous manner, for the purpose of the particular occasion only, the character of the instrument may be so established." But the "present ability of its possessor" there referred to is of importance only for the purpose of determining whether an instrumentality, not falling within the first class above mentioned and not "dangerous or deadly" to others in ordinary use for which

it was designed, could be used in the hands of its possessor in a "dangerous or deadly" manner.

Keeping in mind the above distinction between the two classes of "dangerous or deadly weapons", we believe that whenever the perpetrator of a robbery is armed with an instrumentality of the first class he is guilty of robbery of the first degree as a matter of law. In such cases there is no question of fact for the jury to determine in fixing the degree of robbery for the character of the instrumentality as a "dangerous or deadly weapon" is established by the fact that it is a "weapon" which is "dangerous or deadly" to others in the ordinary use for which it is designed. Neither the intended use nor the "present ability" of the perpetrator on the particular occasion need be shown for the character of the instrumentality is established without such showing. If, as in the present case, the instrumentality is a gun, it is immaterial whether the gun is loaded or unloaded at the time. On the other hand, when the perpetrator of a robbery has in his immediate possession an instrumentality other than one falling within the first class, there is a question of fact to be determined in fixing the degree of robbery. For this purpose the jury should determine whether the character of the instrumentality as a "dangerous or deadly weapon" has been established. If from all the facts and circumstances the jury is convinced beyond a reasonable doubt that the instrumentality was one which, in the hands of the perpetrator of the robbery, was capable of being used in a "dangerous or deadly" manner and that the perpetrator of the robbery intended to use it as a "weapon" should the circumstances require, then the character of the particular instrumentality is established as a "dangerous or deadly weapon" and it is robbery of the first degree. In such cases the intended use of the instrumentality and the "present ability" of the perpetrator of the robbery are of importance in establishing the character of the instrumentality as a "dangerous or deadly weapon" for the purposes of the particular occasion.

From what has been said it follows that appellant was properly convicted of attempt to commit robbery of the first degree and that the evidence was sufficient to sustain the verdict. Appellant makes the further contention that the trial court erred in its instructions defining a "deadly

weapon", but in view of the conclusions we have reached it is unnecessary to consider this contention. The trial court need not have instructed the jury on this subject, as there was no question of fact to be determined by the jury in fixing the degree of robbery. The trial court did permit the jury to determine the degree of robbery under instructions more favorable to appellant than he was entitled to have them, but appellant may not complain.

The judgment and order denying the motion for a new trial are affirmed.

Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 24, 1932.